UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SABRINA B.,[1]

      **Plaintiff,**

v.

      Case No. 3:21-cv-20344
      Magistrate Judge Norah McCann King

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Sabrina B. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On September 21, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since January 1, 2015. R. 98, 110, 275–81. The application was denied initially and upon reconsideration. R. 115–26, 128–39. Plaintiff sought a *de novo* hearing before an

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge ("ALJ"). R. 140–41. ALJ Dina R. Loewy held a hearing on February 20, 2020, at which Plaintiff, who was represented by counsel, appeared. R. 33–41. The ALJ held a second hearing on May 19, 2020; Plaintiff, who was again represented by counsel, testified. R. 42–63 (reflecting further that a vocational expert appeared but did not testify). At a third hearing, held on July 28, 2020, Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 64–87. In a decision dated September 23, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 28, 2020, the date on which Plaintiff's application was filed, through the date of that decision. R. 15–26. That decision became final when the Appeals Council declined review on September 30, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 16, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[3] On that same day, the case was reassigned to the undersigned. ECF No. 13. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

3

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

6

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 41 years old on September 21, 2018, the date on which her application was filed. R. 24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 17.

At step two, the ALJ found that Plaintiff's herniated nucleus pulposus of the cervical, thoracic, and lumbar spine, and venous insufficiencies of the bilateral lower extremities were severe impairments. *Id.* The ALJ also found that Plaintiff's diagnosed hypertension and anxiety, and her alleged headaches, were not severe impairments. R. 17–18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 18–24. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a hairstylist. R. 24.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.,* jobs as an order clerk, a credit clerk, and an assembler–existed in the national economy and could be performed by Plaintiff. R. 24–26. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 21, 2018, the date on which her application was filed, through the date of the decision. R. 26.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 9;

*Plaintiff's Reply Brief*, ECF No. 11. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 10.

### III.  SUMMARY OF RELEVANT MEDICAL EVIDENCE

#### A.  Silvia Aguiar, M.D.

On March 19, 2019, Silvia Aguiar, M.D., conducted a consultative examination of Plaintiff. R. 615–18. Plaintiff reported to Dr. Aguiar that she had been involved in two motor vehicle accidents, first in 2012 and then in June 2018. R. 615. Dr. Aguiar noted that Plaintiff appeared to be in no acute distress, had a normal gait, a normal stance, and a full squat, and that she used no assistive devices and was able to walk on her heels and toes without difficulty. R. 616. Plaintiff needed no help changing for the exam and getting on and off the exam table and she was able to rise from a chair without difficulty. *Id*. Upon examination, Dr. Aguiar noted, *inter alia*, as follows:

> MUSCULOSKELETAL: Cervical spine flexion 30 degrees, extension 30 degrees, rotation 60 degrees bilaterally, lateral flexion 30 degrees bilaterally. No scoliosis, kyphosis, or abnormality in thoracic spine. Lumbar spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. SLR negative bilaterally. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. Full ROM of hips and knees bilaterally. Ankle dorsiflexion right 10 degrees, left 20 degrees; plantar flexion right 20 degrees, left 40 degrees. No evident subluxations, contractures, ankylosis, or thickening. Joints stable and nontender. No redness, heat, swelling, or effusion.
>
> NEUROLOGIC: DTRs physiologic and equal extremities. No sensory deficit noted. Strength 5/5 in the upper and lower extremities.
>
> EXTREMITIES: No cyanosis, clubbing, or edema. Pulses physiologic and equal. No significant varicosities or trophic changes. No muscle atrophy evident.

R. 617–18. Dr. Aguiar's prognosis was fair. R. 618. Dr. Aguiar went on to opine, "Based on today's exam, the claimant has moderate limitations to heavy lifting and carrying, pushing and pulling, climbing stairs, prolonged walking, and prolonged standing." *Id.*

### B.     Sergei Menkin, M.D.

On July 16, 2018, Plaintiff's treating pain management provider, Sergei Menkin, M.D., completed a two-page, fill-in-the-blank, and check-the-box form assessing Plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting. R. 580–81. According to Dr. Menkin, Plaintiff could occasionally (up to one-third of the time) lift 5 to 10 pounds, could stand and/or walk for a total of 30 minutes in an eight-hour workday, and could sit for a total of 10 to 20 minutes in an eight-hour workday. R. 580. Dr. Menkin further opined that Plaintiff could occasionally bend, balance, and kneel, but could never climb, stoop, crouch, or crawl. R. 581. Plaintiff could occasionally reach (including overhead) and feel/handle, but could never push/pull. *Id.* Dr. Menkin did not identify any environmental limitations. *Id.* Dr. Menkin stated that these limitations had been present since June 21, 2018. *Id.*

On March 4, 2020, Dr. Menkin completed a two-page, fill-in-the-blank, and check-the-box form assessing Plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting. R. 926–27. According to Dr. Menkin, Plaintiff could occasionally (up to one-third of the time) lift up to 5 pounds, could stand and/or walk for a total of 1 hour in an eight-hour workday, and could sit for a total of 1 hour in an eight-hour workday. R. 926. Plaintiff could occasionally bend and balance, but could never climb, balance, stoop, crouch, or crawl. R. 927. Plaintiff could occasionally reach (including overhead) and feel/handle, and could occasionally push/pull no more than 5 pounds. *Id.* Dr. Menkin did not identify any environmental limitations. *Id.* Dr. Menkin stated that these limitations found had been present

since April 28, 2014. *Id*.

On June 1, 2020, Dr. Menkin completed a four-page, fill-in-the-blank, and check-the-box form entitled, "Physical Capacity Evaluation." R. 1014–17. Dr. Menkin opined that Plaintiff could occasionally (up to one-third of the time) lift up to 5 pounds, could stand and/or walk for a total of less than one hour in an eight-hour workday, could stand and/or walk for 10 to 20 minutes at a time without interruption, could sit for a total of less than 1 hour in an eight-hour workday, and could sit for 20 to 30 minutes at a time without interruption. R. 1015. Plaintiff would need to shift positions at will from sitting, standing, or walking; and would need to take five 30-minute unscheduled breaks during the day. *Id*. Plaintiff would also need to elevate her legs up to six inches five times per day; he left blank the question asking how long each period of elevation should last. *Id*. Dr. Menkin denied that Plaintiff required the use of an assistive device or medical equipment. R. 1016. According to Dr. Menkin, Plaintiff could occasionally balance and reach (including overhead), but could never climb, stoop, kneel, crawl, or push/pull. *Id*. Dr. Menkin left blank the boxes asking whether Plaintiff could bend, crouch, or finger/handle/feel, and did not indicate the medical findings that support his opined postural and manipulative activities and limitations. *Id*. Dr. Menkin identified no environmental limitations. R. 1017. Asked to identify positive objective findings, Dr. Menkin identified an abnormal gait, swelling, muscle spasm, muscle weakness, and reduced range of motion, indicating "see attached[,]" but it is not clear what was attached to this form. *Id*. Dr. Menkin did not indicate how long these limitations had been present. *Id*.

IV.     DISCUSSION

Plaintiff contends that the ALJ erred in considering Dr. Menkin's opinions and that this error resulted in a flawed RFC. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 11–16; *Plaintiff's Reply Brief*, ECF No. 11, pp. 1–4. Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer*, 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical

---

[4] As previously noted, Plaintiff's claim was filed on September 21, 2018.

sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(2). The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b).

In the case presently before the Court, the ALJ found at step four of the sequential evaluation process that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can lift and carry up to 10 pounds occasionally, and less than 10 pounds frequently; can sit up to six hours, in up to 30 minute increments at a time before being allowed to stand at the workstation for three minutes while on task before resuming sitting; can stand and/or walk up to two hours total per day in up to 15 minute increments at a time before resuming sitting; can occasionally climb ramps or stairs, and never climb ladders ropes or scaffolds; can occasionally balance or stoop, and never perform kneeling, crouching or crawling, can occasionally push/pull but not more than 5 pounds of force, frequently reaching handling or fingering, occasionally reaching overhead, may use a six inch high step stool under her workstation while seated, moderate office noise and lighting, avoid all exposure to hazardous machinery unprotected heights and operational control of moving machinery.

R. 18. In reaching this determination, the ALJ considered, *inter alia*, Dr. Menkin's examination findings as follows:

> Claimant was involved in a second motor vehicle accident in June 2018. She was examined by pain management provider Serge Menkin, M.D. and complained of pain and spasms in the neck, mid back and lower back with paresthesias in the upper and lower extremities bilaterally. Dr. Menken noted that she ambulating was severely intoxicated show difficulty with transfers [sic]. Range of motion was limited throughout the spine and she had reduced range of motion of left shoulder. Range of motion of the right knee was painful. Claimant had diminished sensation to light touch in the bilateral upper extremities and the lower right extremity and straight leg raise was positive on the right side (Ex. 3F, pg. 29).
>
> ***
>
> The claimant was seen by treating provider Serge Menkin, M.D. on August 13, 2018 for neck and back pain and headaches and the claimant reported at an intensity 9/10; a severely antalgic gait was noted with difficulty and limitations in motion of the spine and spasm noted in the paraspinal muscles noted (Ex. 3F, pg. 17). A positive straight leg raise on the right was noted, along with nystagmus and dysmetria (Id.). MRI of the cervical spine in July 2018 showed herniated discs (Ex. 3F, pg. 3). MRI of the thoracic spine revealed herniated and bulging discs (Ex. 3F, pg. 3).
>
> ***

> October 10, 2018 treatment notes from Dr. Menkin for neck pain, headaches and lumbar pain since a motor vehicle accident on June 21, 2018, noted 70% relief of pain following a cervical epidural injection, while also noting pain rated by the claimant at a 9/10 on a visual analog scale (Ex. 3F, pg. 3). The claimant reported difficulty with activities of daily living, as well as walking and standing due to headaches and balance issues (Id.). The clamant reported paresthesia in the upper extremities, worse on the left, was reported [sic], as well as a history of bilateral lower extremity venous surgery (Id.). A severely antalgic gait was noted, with difficulty transferring to and from the examination table; a positive Spurling's maneuver was also indicated with positive facet loading tests (Id.). Muscle strength testing noted strength in the upper extremities and right leg of 4/5 and 5/5 in the left leg, with diminished sensation in the right leg and upper extremities (Id.). Degenerative disc disease in the cervical and thoracic spines were noted on MRI (Id.).

R. 20–21.

> Examination by Dr. Menkin in June 2020 noted a severely antalgic gait, with limited ranges of motion in the left shoulder and levels of the spine and painful motion of the right knee were noted with effects of epidural injections noted to be limited in effect; the claimant was recommended for further shots (Ex. 13F, pgs. 3-4). The claimant was noted to be continuing to decrease dosages of opioid medications and benzodiazepines (Id.).

R. 22. The ALJ went on to consider Dr. Menkin's opinions, finding that those opinions were unpersuasive, explaining:

> Pain management provider, Serge Menkin, MD opined in July 2018 that the claimant could lift and carry up to ten pounds occasionally; could stand and walk for a half hour in an eight hour day and sit for 10-20 minutes in an eight hour day; can occasionally bend, balance, and kneel and never climb, stoop, crouch or crawl; and could occasionally reach, handle and feel and never push or pull and that these limitations have been present since June 21, 2018 (Ex. 2F, pg. 2). In March 2020, Dr. Menkin opined that the claimant could occasionally lift and carry up to five pounds; could stand/walk and sit for one hour each in an eight hour day; could never climb, stoop, crouch, kneel or crawl and occasionally bend and balance; and could occasionally reach, feel and handle and push/pull less than five pounds (Ex. 9F, pg. 2). In June 2020 opinion, Dr. Menkin opined that the claimant could lift and carry up to five pounds occasionally; could sit for what appeared to be less than one hour and the same for standing/walking in an eight hour day; would need five unscheduled breaks per day and need to elevate the legs the same number of times; and could neve climb, stoop, kneel, or crawl, and only occasionally balance (Ex. 12F, pgs. 1-3). These opinions are unpersuasive, as the claimant's treatment record does support significant limitations consistent with the range of sedentary work above, but not the severe limitations opined to such as being able to sit or stand and

walk for less than one hour in an eight hour day, as the claimant's care history is fairly conservative aside from epidural injections. Further, Dr. Menkin acknowledges that there is no need for the use of assistive devices for ambulation despite these ostensibly disabling limitations.

The severe physical findings by pain management provider Dr. Menkin are inconsistent with the record. Although Dr. Menkin notes a severely antalgic gait, significant limitations in range of motion of the spine, diminished sensation and muscle strength, other examiners have found primarily normal clinical findings.

As noted above in this decision, the claimant was contemporaneously seen by the following examiners or providers:

Examination by Irina Aleshinskaya, D.O at Northwell Health Emergency room in July 2018 noted the following clinical findings: full range of motion, intact motor strength, intact sensation, and ambulating with a steady gait (Ex. 10F, pgs. 2-5).

Examination at by treating provider, Indira Bashic, N.P. on September 15, 2018 was within normal limits. Nurse Practitioner Bashic found no clubbing, edema, or cyanosis in the extremities, no focal neurological deficits and normal range of motion of all the joints in her musculoskeletal system (Ex. 6F, pg. 5).

Examination by treating provider Vincent DeGennaro on September 18, 2018 was within normal limits. Dr. DeGennaro found no clubbing, edema, or cyanosis in the extremities. The claimant was neurologically intact with no focal deficits. The claimant's back was non-tender to palpitation and there was full range of motion of all the joints in her musculoskeletal system (Ex. 6F, pg. 4).

Examination by consultative examiner Dr. Aguiar in March 2019 found a normal gait and stance with no difficulty ambulating, squatting, or walking on heels and toes and no need for assistance changing or getting on and off the exam table. Limits in cervical spine motion were noted, with no limits in lumbar or thoracic spine motion; ankle motion was limited as well, but no other abnormalities were noted in the musculoskeletal or neurologic portions of the examination. Full strength in all extremities and in grip strength and dexterity were noted (Ex. 4F).

Examination by Physician's Assistant, Mor Levy, in August 2019, at the emergency room at Staten Island University Hospital noted that the claimant's neck was supple, she had 5/5 strength throughout, had no calf tenderness, musculoskeletal edema, or cyanosis, and had a normal gait (Ex. 10F, pg. 14).

The severe clinical findings of pain management provider Dr. Menkin are inconsistent with the contemporaneous and relatively normal findings of Dr. Aleshinskaya, N.P. Bashic, Dr. DeGennaro, Dr. Aguiar, and Mor Levy, P.A.

R. 22–24.

Plaintiff argues that the ALJ's consideration in this regard is contradictory because the ALJ labeled Plaintiff's treatment history as "fairly conservative" yet went on to acknowledge Dr. Menkin's probative objective findings and rejected this physician's findings with "boilerplate statement" "without any citation to the record." *Plaintiff's Memorandum of Law*, ECF No. 9, p. 13. Plaintiff insists that the ALJ must discuss the evidence that supports the decision and explain why the ALJ accepted some evidence and rejected other evidence. *Id*. at 13–14 (citations omitted). Plaintiff further argues that Dr. Menkin's opinions are consistent with his objective findings and that the ALJ improperly rejected Dr. Menkin's opinions simply because he did not opine that Plaintiff required the use of an assistive device. *Id*. at 14–15 (citations to the record omitted). Finally, Plaintiff contends that the ALJ's error in considering Dr. Menkin's opinions was not harmless because, were his opined functional limitations accepted, Plaintiff would not be able to engage in even sedentary work. *Id*. at 15–16.

For her part, the Acting Commissioner argues that the ALJ appropriately followed the applicable regulations when evaluating Dr. Menkin's opinions. *Defendant's Brief Pursuant to Local Rule 9.1*, ECF No. 10, pp. 11–12. The Acting Commissioner highlights the ALJ's specific consideration of Plaintiff's conservative treatment history and the fact that Plaintiff did not need an assistive device to ambulate, as well as the normal clinical findings of Dr. Aleshinskaya, Nurse Bashic, Dr. DeGennaro, Dr. Aguiar, and Ms. Levy, which conflicted with Dr. Menkin's extreme limitations. *Id*. at 12–13 (quoting R. 23–24). According to the Acting Commissioner, the issue is not simply whether Dr. Menkin's opinions were consistent with his own reported findings, but whether they were consistent with the overall record, which they were not. *Id*. at 13–14.

16

In reply, Plaintiff insists that the ALJ's rejection of Dr. Menkin's opinions was based on mere speculation, *i.e.*, because Plaintiff did not require an assistive device. *Plaintiff's Reply Brief*, ECF No. 11, p. 3. Plaintiff also argues that the evidence from other providers is consistent with Dr. Menkin's opinions: "For example, consultative examiner Dr. Aguiar found limits in cervical spine as well as ankle motion." *Id*. at 3–4.

Plaintiff's arguments are not well taken. Contrary to Plaintiff's assertion in her opening brief, the ALJ did not reject Dr. Menkin's opinions with a "boilerplate statement." Instead, the ALJ detailed specific normal clinical findings from multiple providers—with citations to the record—which conflicted with Dr. Menkin's extreme opinions. R. 23–24. In other words, the ALJ properly considered and explained why Dr. Menkin's opinions were inconsistent with and unsupported by the record evidence. *Id*.; *see also* 20 C.F.R. § 416.920c(c)(2). Accordingly, even assuming, without holding, that Dr. Menkin's own treatment records were consistent with his opinions, substantial evidence supports the ALJ's finding these opinions were unpersuasive because they were inconsistent with other record evidence, which reflected generally normal clinical findings. *See id.*; *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings); *Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa.

June 24, 2021) (finding that the ALJ "appropriately assessed Dr. Kellis' medical opinion in light of these standards" under 20 C.F.R. §§ 404.1520c, 416.920c where the ALJ concluded that a physician's opinion was not persuasive because "the limitations [the physician] espoused were not consistent with or supported by other evidence of record" such as, *inter alia*, the treatment records, for instance, indicated a greater ability to walk, lift, and stand").

Plaintiff argues in reply that Dr. Aguiar's findings of "limits in the cervical spine motion as well as ankle motion" are consistent with Dr. Menkin's opinions. *Plaintiff's Reply Brief*, ECF No. 11, p. 4. The Court is not persuaded that this issue requires remand. As set forth above, the ALJ found that Dr. Menkin's extreme opinions were inconsistent with the "*primarily* normal clinical findings" of other providers. R. 23 (emphasis added). In so finding, the ALJ expressly acknowledged Dr. Aguiar's notes regarding Plaintiff's limits in her cervical spine and ankle motion but went on to observe that the remainder of Dr. Aguiar's findings were otherwise normal, as were the clinical findings of Dr. Aleshinskaya, Nurse Bashic, Dr. DeGennaro, and Ms. Levy; the ALJ therefore concluded that these findings were inconsistent with Dr. Menkin's extreme opinions. R. 23–24. The ALJ's consideration in this regard fairly summarized and characterized the evidence and the ALJ's evaluation of Dr. Menkin's opinions complied with the applicable regulation. *Id.*; 20 C.F.R. § 416.920c(c). To the extent that Plaintiff insists that the Court remand based on Dr. Aguiar's findings of limits in Plaintiff's cervical spine and her ankle motion, Plaintiff's argument amounts to a request to reweigh the evidence, which the Court is not authorized to do. *See Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the

18

substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Notably, despite finding some limitations in Plaintiff's cervical spine and ankle motion, Dr. Aguiar found that Plaintiff had only "moderate limitations to heavy lifting and carrying, pushing and pulling, climbing stairs, prolonged walking, and prolonged standing." R. 618. Plaintiff has not explained—nor is it apparent to the Court—how that finding conflicts with the ALJ's RFC, which limits Plaintiff to sedentary work with additional restrictions. R. 18; *see generally Plaintiff's Memorandum of Law*, ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 11; *cf. Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").

Finally, Plaintiff contends that the ALJ erred finding that Dr. Menkin acknowledged that Plaintiff did not need an assistive device. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 15; *Plaintiff's Reply Brief*, ECF No. 11, p. 3. Even accepting, for present purposes only, that the ALJ erred in this regard, the Court is not persuaded that any such error requires remand. As set forth above, this finding was but one factor that the ALJ considered when finding that Dr. Menkin's extreme opinions were unpersuasive. R. 23–24.

In short, for all these reasons, the Court concludes that the ALJ's consideration of Dr. Menkin's opinions enjoys substantial support in the record.

**V.    CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 3, 2023                                         _s/Norah McCann King_
                                                                            NORAH McCANN KING
                                                              UNITED STATES MAGISTRATE JUDGE